OPINION
Defendant-appellant, Richard Altomare (Altomare), appealed a decision rendered by the Columbiana County Court, Northwest Area, finding him guilty of obstructing official business in violation of R.C. 2921.31(A). Subsequently Mr. Altomare died and the personal representatives of his estate were substituted pursuant to App.R. 29(A)to further pursue this appeal.
This case arises from the attempted service of a subpoena in a civil matter in the Columbiana County Court, Eastern Area. Attorney Allison filed a precipe for a subpoena on June 26, 1998. The precipe directed Thomas Edgell (Edgell), bailiff for the Columbiana County Court, Southwest Area, to serve a subpoena on "Jane Malmsberry aka Jane Altomare, 44251 SR 558 COL., OH 44408."
In addition to serving as bailiff, Edgell also owns a private investigation service called Thomas L. Edgell Associates, Inc. which performs services including civil, criminal, and investigative matters.
On August 4, 1998, Edgell went to 44251 State Route 558 to serve the subpoena. Edgell entered the driveway and was approached by Altomare. Edgell identified himself as a bailiff and informed Altomare that he was there to serve the subpoena on a "Jane Malmsberry, or a Jane Altomare."
Edgell testified that Altomare stated that he did not know a Jane Malmsberry or a Jane Altomare. Edgell alleged that he continued with further inquiries asking, "Well, could it be any combination of the name? Betty Jane? Or Mary Jane? Or anything else, whether it was Malmsberry or Altomare?" Edgell testified that Altomare stated "[n]o, that he didn't recognize the name. Didn't know the person." Altomare admitted to denying knowing a "Jane Malmsberry or Jane Altomare," but testified that Edgell never asked him whether he knew any of the other names.
After failing to serve the subpoena, Edgell began to conduct additional investigations. Edgell contacted a private information service, B B Service, and requested any information concerning a "Jane Malmsberry" or a "Jane Altomare." In response to Edgell's inquiry, B B Service sent Edgell a variety of information concerning a Helen Jane Malmsberry. The information included the driving record for a H. Jane Malmsberry. The driving record indicated that H. Jane Malmsberry had registered vehicles at the address of 44251 State Route 558, Columbiana, Ohio, the same address that Edgell had previously visited and attempted to serve the subpoena. The search also returned the names Jane Malmsberry, a Helen J. Malmsberry, a Jeri Malmsberry, and a J-E-R-I, all of which purportedly resided at the address 44251 State Route 558, Columbiana, Ohio.
Edgell attempted to confirm this information. He contacted Attorney Allison, who provided him with an additional piece of information. Attorney Allison provided Edgell with a fax listing A. R. Show Horses, a business owned by Altomare. The fax listed Altomare's name, and also listed a Jane Malmsberry as farm manager. Edgell also received information from the post office indicating that a Jane or Helen Jane Malmsberry also resided at 44251 State Route 558.
Once again, Edgell attempted to serve the subpoena. He returned to 44251 State Route 558, accompanied with a sheriff's deputy, Sergeant Foley. Edgell again confronted Altomare. Edgell showed Altomare all of the aforementioned documents evidencing a "Jane Malmsberry" or a "Helen Jane Malmsberry." Edgell further claimed that he inquired as to whether or not Altomare knew any person named Helen Jane Malmsberry or any person with any combination of those names.
Altomare stated that he refused to look at the papers, and claimed that he did not know the person listed in the papers. Altomare claims that Edgell never specifically used the name Helen Malmsberry, or anything close to it. This testimony was partially supported by the testimony of Sergeant Foley, who testified that he could only recall Edgell referencing the names Jane Altomare and Jane Malmsberry.
Altomare testified that his girlfriend of six years was named Helen Malmsberry, however Altomare stated that he does not commonly refer to her as "Jane Malmsberry" or any other name associated with "Jane." Altomare also stated that Helen Malmsberry was not his wife.
Edgell was unable to effect service of the subpoena. After unsuccessfully attempting to serve the subpoena, Edgell's personal secretary erroneously billed Attorney Allison for the cost incurred in attempting to serve the subpoena. The charges amounted to approximately $284.70 and included the costs incurred from obtaining the information from B B Services. Attorney Allison's secretary paid the bill.
On August 6, 1998, Edgell filed an affidavit with the prosecutor's office alleging that Altomare had obstructed official business by providing Edgell with "misinformation concerning the identity and whereabouts of Jane Malmsberry, AKA: Jane Altomare[.]" A complaint against Altomare was filed August 7, 1998 in the Columbiana County Court, Eastern Area.
Altomare entered a plea of not guilty on August 20, 1998.
The case was transferred to the Columbiana County Court, Northwest Area, on September 15, 1998 due to a conflict of interest on the part of the trial judge.
On October 15, 1998, Altomare once again entered a plea of not guilty. The court held a trial on the matter December 21, 1998. On February 8, 1999, the trial court issued a judgment entry finding Altomare guilty of obstructing official business in violation of R.C. 2921.31(A).
Altomare filed timely notice of appeal February 24, 1999. On August 4, 2000, Altomare's counsel moved to substitute the Co-executors of the Estate of Richard Altomare Sr., as party-appellant for Richard Altomare Sr., who was the victim of a homicide on September 19, 1999. This court granted that motion.
Appellant's first assignment of error states:
 "THE TRIAL COURT ERRED IN FINDING DEFENDANT GUILTY OF OBSTRUCTION OF JUSTICE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. [RECORD, JUDGMENT ENTRY, JUNE 19, 1997] [sic]"
In determining whether a verdict is a against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences, and determine whether, in resolving conflicts in evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins (1997),78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclinationof the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Citations omitted and emphasis sic.) Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390 (Cook, J., concurring). A reversal based on the weight of the evidence can occur only after the state both has presented sufficient evidence to support conviction and has persuaded the trier of fact to convict. Id. at 388.
Appellant was charged with obstruction of official business under R.C.2921.31(A) for making a false and misleading statement to a public official. That section provides:
 "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." (Emphasis added.)
First, appellant argues that his alleged actions do not rise to the level of conduct needed to support a conviction under a charge for obstruction of official business. Appellant relies upon Dayton v. Rogers
(1979), 60 Ohio St.2d 162, for the proposition that the making of an unsworn false oral statement to a public official does not fall within the scope of conduct prohibited under R.C. 2921.31(A). However, in Statev. Lazzaro (1996), 76 Ohio St.3d 261, the Ohio Supreme Court overruled its holding in Dayton and stated: "[W]e hold that the making of an unsworn false oral statement to a public official with the purpose to mislead, hamper, or impede * * * is punishable conduct within the meaning of * * * [R.C.] 2921.31(A)." Lazzaro, 76 Ohio St.3d at 266.
Next, appellant argues that Edgell was not acting in his official capacity as a bailiff when attempting to serve the subpoena.
A thorough review of the evidence shows that Edgell was acting in his official capacity as a bailiff in attempting to serve the subpoena. The court ordered Edgell to effect service of the subpoena. Edgell had not been appointed as an individual process server under Civ.R. 45(B).[1]
Although Attorney Allison testified that he had not indicated the capacity in which he wished Edgell to serve the subpoena, the precipe for the subpoena referred to Edgell as "Tom Edgell, Bailiff," it did not refer to Edgell as "Tom Edgell, Thomas L. Edgell Associates."
When Edgell went to serve the subpoena on Jane Malmsberry a.k.a. Jane Altomare, he went there as an officer of the court in his official capacity as a bailiff. Edgell testified that his original private billing to Attorney Allison was a simple mistake. Once Edgell learned that his secretary had mistakenly billed Attorney Allison for the attempted service in his official capacity, Edgell issued Attorney Allison a full refund.
Appellant next argues that appellee failed to demonstrate that appellant committed the requisite actus reus and possessed the requisitemens rea required under the statute.
After thoroughly reviewing the record, appellant did purposely make a false statement to Edgell that was designed to delay, prevent, and obstruct Edgell's service of the subpoena. A review of the facts and evidence presented at trial indicates that appellant made a false statement to Edgell, a public official, when stating in consecutive attempts of service that he did not know the person listed in the subpoena. Appellee presented evidence at trial demonstrating that the individual listed as Jane Malmsberry or Jane Altomare of 44251 State Route 558, was in fact appellant's girlfriend of six years Helen Malmsberry, also known as Helen Jane Malmsberry, H.J. Malmsberry, and H. Jane Malmsberry. Appellee also presented evidence showing that a Jane Malmsberry/Helen Malmsberry worked for appellant. Appellee presented a business card for A. R. Show Horses, appellant's business, which listed a Jane Malmsberry as farm manager.
Although appellant vehemently denied knowing a Jane Malmsberry, knowing that his girlfriend of six years had the given name of Helen Jane Malmsberry, or having knowledge that Jane Malmsberry and H. Jane Malmsberry were actually the same person as his girlfriend Helen Malmsberry, such evidence created issues of fact and credibility for thetrial court to determine. The trier of fact was in the best position to judge the credibility of witnesses and the weight to be given to the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A review of the evidence shows that the trial court reasonably concluded that appellant knew the person listed in the subpoena to be his girlfriend of six years, Helen Malmsberry.
Having determined that appellant committed the act within the meaning of R.C. 2921.31(A), the court must now determine whether appellant purposely committed the act with intent to prevent, obstruct, or delay Edgell's service of the subpoena.
R.C. 2901.22(A) defines the mental state of purposely:
 "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
A review of the record shows that appellant purposely gave the misleading statement with the intent of obstructing, preventing, or delaying Edgell's service of the subpoena. The subpoena that Edgell was attempting to serve involved a civil lawsuit in which appellant was the plaintiff. Attorney Allison represented the defendant in the suit and subpoenaed Jane Malmsberry a.k.a. Jane Altomare. Attorney Allison testified that he was under the impression that this witness would provide his client with favorable evidence. The facts in evidence, particularly appellant's status and stakeholder as plaintiff in the civil suit in which Edgell was attempting to serve the subpoena, and appellant's untruthful denial of knowing that the Jane Malmsberry listed in the subpoena was in fact his girlfriend of six years, Helen Malmsberry, who was an employee of his and who also registered her motor vehicles to the address of his horse farm, support the conclusion that appellant committed an act intended to purposely delay, prevent, or obstruct Edgell's service of the subpoena.
Finally, the court must consider whether appellant's false statements hampered or impeded Edgell's service of the subpoena. In addition to requiring that appellant purposely make a false statement, R.C. 2921.31(A) also imposes the additional requirement that such statement hamper or impede the performance of the public official's duties. In State v.Stephens (1978), 57 Ohio App.2d 229, overruled on other grounds by Statev. Lazzaro (1996), 72 Ohio St.3d 261, the court determined that in order for an act to "hamper or impede" a public official's duties, "there must be some substantial stoppage of the officer's progress before one can say he was hampered or impeded." Stephens, 57 Ohio App.2d at 230.
Applying the law to the present set of facts, the evidence shows that appellant's false statements hampered or impeded Edgell's performance of his duties. The evidence showed that Edgell was unable to obtain service of the subpoena. Edgell testified that appellant's actions impeded his attempt at service of the subpoena to the extent "I [Edgell] hit the biggest stone wall ever." All of the information that Edgell obtained linked or connected Jane Altomare/Jane Malmsberry/Helen Jane Malmsberry/H. Jane Malmsberry to appellant's horse farm. Yet despite apparent knowledge to the contrary, appellant denied knowing the person sought in the subpoena. Clearly, appellant's false statements affected a "substantial stoppage" of Edgell's attempted service of the subpoena.
Based on the foregoing and after viewing the evidence in a light most favorable to the prosecution, the verdict of the trial court was supported by sufficient evidence, and a rational trier of fact could have found all the essential elements of the crime proven beyond a reasonable doubt.
In addition, after thoroughly examining the record and weighing the evidence before the trial court, the trial court's judgment was not against the manifest weight of the evidence. The trial court did not lose its way in evaluating the weight and credibility of the evidence before it, and acted in accordance with the law by issuing a verdict finding appellant guilty of obstruction of official business.
For the aforementioned reasons, appellant's first assignment of error is without merit.
Appellant's second assignment of error states:
 "THE TRIAL COURT ERRED IN REFUSING TO ALLOW TESTIMONY OF COMPLAINANT'S RELATIONSHIP TO WILLIAMS APPLE LAW FIRM TO SHOW MOTIVE OF COMPLAINANT FOR SLANTING COMPLAINANT'S TESTIMONY. [RECORD, JUDGMENT ENTRY, JUNE 19, 1997]" [sic]
In appellant's second assignment of error, appellant argues that the trial court committed prejudicial error by failing to allow appellant to question Edgell as to his relationship with Judge Apple. Appellant argues that the evidence linking Edgell to Judge Apple, a member of the judiciary who appellant was involved with over a fee dispute, was essential in determining the bias and credibility of Edgell, the state's chief complaining witness.
An appellate court, which reviews the trial court's admission or exclusion of evidence, must limit its review to whether the lower court abused its discretion. State v. Finnerty (1989), 45 Ohio St.3d 104. "A trial court abuses its discretion when it acts in an unreasonable, arbitrary or unconscionable manner. A reviewing court should not substitute its judgment for that of the trial court." Id. at 108.
After thoroughly reviewing the record, the trial court did not abuse its discretion by failing to allow further testimony regarding appellant's dispute with Judge Apple. Despite appellant's characterization to the contrary, appellant was permitted to elicit testimony concerning Edgell's knowledge of appellant's fee dispute with Judge Apple. Edgell was permitted to testify on cross-examination about his communications with Judge Apple. The trial court also permitted appellant to address Edgell's alleged bias and relationship with Judge Apple. It was only after further examination that the trial court concluded that further testimony regarding the matter was irrelevant.
Based on the foregoing, the trial court did not abuse its discretion in precluding additional testimony concerning appellant's dispute with Judge Apple.
Appellant's second assignment of error is without merit.
For the aforementioned reasons, the judgment of the trial court is hereby affirmed.
 _____________________ DONOFRIO, J.
Vukovich, J., concurs, Waite, J., concurs.
[1] Even if Edgell had been designated a private process server by court order, he would still qualify as a public official for the purposes of R.C. 2901.31. Public official, as defined in R.C. 2901.01(A), includes temporary appointed agents of the state. Once a private process server is designated by court order to serve the subpoena, the private process server becomes a temporary agent of the state.